**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

STATE OF OHIO
 EX REL TED MARCUM,

                Petitioner,     :     Case No. 3:17-cv-437

    - vs -                         District Judge Walter H. Rice
                                   Magistrate Judge Michael R. Merz

SHERIFF DAVE DUCHAK,

                :

                Respondent.

# REPORT AND RECOMMENDATIONS ON MOTIONS TO DISMISS

This case is before the Court on Motion to Dismiss of Defendant Steve Layman (ECF No. 9) and a joint Motion to Dismiss of Defendants Dave Duchak, Elizabeth Gutmann, and Rob Davie (ECF No. 7). Plaintiff has filed a combined Memorandum in Opposition (ECF No. 32)[1] and Defendants have filed a joint Reply in Support (ECF No. 37).

Both Motions are made under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. A motion for involuntary dismissal is a dispositive pre-trial motion on which an assigned Magistrate Judge must make a recommended decision in the first instance.

"The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or merits of the case." Wright & Miller, FEDERAL PRACTICE AND PROCEDURE: Civil 2d §1356 at 294 (1990); *see also Gex v. Toys "R" Us*, 2007 U.S. Dist. LEXIS 73495, *3-5 (S.D. Ohio, Oct. 2, 2007); *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993), *citing Nishiyama v. Dickson Cty.,*

---

[1] This paper also included a Motion for Default Judgment which has been denied by separate Order (ECF No. 33).

*Tennessee*, 814 F.2d 277, 279 (6th Cir. 1987). Stated differently, a motion to dismiss under Fed.R.Civ.P. 12(b)(6) is designed to test only the sufficiency of the complaint. *Riverview Health Institute LLC v. Medical Mutual of Ohio,* 601 F.3d 505, 512 (6th Cir. 2010).

The test for dismissal under Fed. R. Civ. P. 12(b)(6) has been restated by the Supreme Court as follows:

> Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)(" Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S.544, 555 (2007).

> [W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, "'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" 5 Wright & Miller § 1216, at 233-234 (quoting *Daves v. Hawaiian Dredging Co.*, 114 F.Supp. 643, 645 (D. Hawaii 1953) ); see also *Dura [Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)], at 346, 125 S.Ct. 1627; *Asahi Glass Co. v. Pentech Pharmaceuticals, Inc* ., 289 F.Supp.2d 986, 995 (N.D.Ill.2003) (Posner, J., sitting by designation) ("[S]ome threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase").

*Twombly*, 550 U.S. at 558; see also *Association of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502 F.3d 545 (6th Cir. 2007). "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its fact,'" *Doe v. Miami University*, ___ F.3d ___, 2018 U.S. App. LEXIS 3075, *12-13 (6th Cir. Feb. 9, 2018), quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), in turn quoting *Twombly*, 550 U.S. at 570.

**The Complaint**

Mr. Marcum brought this action pro se in the Miami County Common Pleas Court under 42 U.S.C. § 1983 for monetary damages and declaratory, injunctive, habeas corpus, and mandamus relief. Honorable Elizabeth S. Gutmann, then[2] a Judge of the Miami County Municipal Court, and Steve Layman, Miami County Public Defender, are sued in their official capacities only. Miami County Sheriff Dave Duchak is sued in both individual and official capacities. Correctional Officer Rob David is mentioned in the caption of the Complaint, but not in the section indicating the capacities in which Defendants are sued; that omission is corrected at ECF No. 2, PageID 243 where Marcum indicates he is suing Davie in both individual and official capacities. Assistant County Prosecutor Stacy Wall is sued only in her official capacity.

In the Complaint Marcum alleges he was arrested for breaking and entering on October 5, 2017, and jailed pending initial appearance (ECF No. 2, PageID 172-73). The next morning he had a video arraignment before Judge Gutmann who set bond and scheduled a preliminary hearing for October 12, 2017. When Marcum appeared in person for that proceeding, Assistant County Prosecutor Wall amended the charge from breaking and entering, a fifth degree felony, to attempted breaking and entering, a first degree misdemeanor and therefore within Judge Gutmann's dispositional authority as a municipal judge. Marcum, at Wall's urging, waived his

---
[2] The Court takes judicial notice that Judge Gutmann retired at the end of December 2016.

right to counsel for a change of plea and changed his plea to no contest. Judge Gutmann then sentenced him to 180 days confinement in the County Jail. *Id.* at 174-75. Marcum promptly sought a new sentencing hearing and threatened suit. Marcum claims he was not advised that sentence could be imposed immediately after plea and that Judge Guttmann declined to appoint counsel for appeal.

Beginning at page twelve of the Complaint (PageID 176), Marcum provides a long disquisition on the right to counsel as recognized in the series of the Supreme Court cases that begins with *Powell v. Alabama*, 287 U.S. 45 (1932)(capital cases), and proceeds through *Gideon v. Wainwright*, 372 U.S. 335 (1963)(felony cases), and *Argersinger v. Hamlin,* 407 U.S. 25 (1972)(misdemeanor cases where imprisonment is a possibility). See also *Alabama v. Shelton,* 535 U.S. 654 (2002)(even if sentence is suspended).

Beginning at page twenty-four (PageID 189), Marcum seeks mandamus relief to require the Sheriff to provide inmates with a "free" phone call to contact an attorney or a bondsman. At page fifty he alleges that the agreement between the Miami County Sheriff's Office and the Miami County Public Defender which "prohibits all inmates from 'calling' the Public Defender's Office unless the Public Defendant [sic] requests for such inmate to call the office" is part of an illegal conspiracy (PageID 215). He references the Inmate Handbook to show the existence of this policy. Defendant Layman appeared with Marcum at arraignment and explained this policy, giving him the form to request court-appointed counsel. *Id.* at PageID 216.

At several points in the Complaint, Marcum complains of the Miami County Jail's failure to comply with Ohio law and the Constitution on the processing of inmate grievances, e.g., at PageID 225. He also claims that the Miami County Jail provides constitutionally inadequate

access to materials for legal research, citing particularly *Bounds v. Smith,* 430 U.S. 817 (1977), and *Lewis v. Casey*, 518 U.S. 343 (1996).  See, e.g. PageID 235.

At page seventy-four (PageID 239), Marcum complains that Correctional Officer Rob Davie used excessive force against Marcum in shackling and handcuffing him for transport to arraignment, causing bleeding and bruising of Marcum's wrists and ankles, and physical, psychological, and emotional pain.  At the same place, he avers that there are "rapid acts of violence" at the Jail, making it unsafe and restricting inmates' access to fresh air, sunlight, and exercise.

**The Cause of Action under 42 U.S.C. § 1983**

42 U.S.C. § 1983, R.S. § 1979, was adopted as part of the Act of April 20, 1871, and reads, as amended:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress , except that in any action brought against a judicial officer, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.  For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

The statute creates a cause of action sounding essentially in tort on behalf of any person deprived of a constitutional right by someone acting under color of state law. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 709 (1999); *Memphis Community School*

5

*District v. Stachura,* 477 U.S. 299 (1986); *Carey v. Piphus,* 435 U.S. 247 (1978); *Monroe v. Pape*, 365 U.S. 167 (1961). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992), citing *Carey*, 435 U.S. at 254-57. In order to be granted relief, a plaintiff must establish that the defendant deprived him of a right secured by the United States Constitution and the laws of the United States and that the deprivation occurred under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988); *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Flagg Brothers Inc. v. Brooks*, 436 U.S. 149, 155 (1978).

Marcum correctly avers in his Complaint that the state courts have concurrent jurisdiction with the federal courts of cases under 42 U.S.C. § 1983. However, because Marcum avers that his claims, or at least some of them, arise under § 1983, removal to this Court was proper under 28 U.S.C. §§ 1331 and 1441.

**Defendant Steve Layman**

Defendant Layman, the Miami County Public Defender, seeks dismissal on the ground he was not acting under color of state law when he did what it is alleged he did in this case, to wit, functioning as a lawyer in appearing with Marcum at arraignment, providing him with forms to request and appointed counsel, and advising him of the policy that telephone calls to the Public Defender's Office in Miami County can only be made by inmates when the Office requests them.

The authority cited by Layman, *Polk Cty. v. Dodson* 454 U.S. 312 (1981), is dispositive of this claim in that it holds that a public defender acting in that capacity is not acting under color

of state law as required by 42 U.S.C. § 1983.

Marcum also alleges Layman conspired with Sheriff Duchak to adopt and enforce the no-calls-except-when-requested policy. The standard governing a § 1983 conspiracy claim is

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Heyne v. Metropolitan Nashville Public Schools*, 655 F.3d 556 (6th Cir. 2011), *quoting Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003), *quoting Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). Although circumstantial evidence may prove a conspiracy, "[i]t is well-settled [sic] that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Hooks, quoting Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *accord Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004). That pleading standard is "relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008).

Marcum has adequately alleged an agreement between Defendants Duchak and Layman to adopt and enforce the complained-of policy, evidenced by its reference in the inmate handbook. The difficulty with the claim is that there is nothing unlawful about the policy. A public defender is not obliged by law, or at least any law cited by Marcum in his opposition (ECF No. 32-1), to accept telephone calls from jail inmates.

It is therefore respectfully recommended that the Complaint, insofar as it pertains to Steve Layman, be dismissed for failure to state a claim upon which relief can be granted.

**Defendant Elizabeth Gutmann**

In her portion of the Motion to Dismiss, Judge[3] Gutmann claims the benefit of judicial immunity (Motion, ECF No. 7, PageID 295, citing *Pierson v. Ray,* 386 U.S. 547 (1967)). The common law absolute immunity of judges was first recognized in this country in *Bradley v. Fisher,* 80 U.S. 335, 355 (1872). It was explicitly extended to actions under 42 U.S.C. § 1983 in *Pierson* and *Stump v. Sparkman*, 435 U.S. 349 (1978). That immunity only protects judges when they are sued in their individual capacity and Judge Gutmann has been sued here in her official capacity only.

Marcum responds to the immunity claim by asserting Judge Gutmann was without jurisdiction to act as she did in this case. The immunity is lost only when judges act in the clear absence of all jurisdiction. *Pierson* at 362; *King v. Love*, 766 F.2d 962 (6th Cir. 1985); *Schorle v. City of Greenhills,* 524 F. Supp. 821, 828 (S.D. Ohio 1981). Limited jurisdiction judges are absolutely immune from damages for acts in excess but not in clear absence of jurisdiction. *Id.* While subject matter jurisdiction may be narrowly construed for other purposes, when the issue is judicial immunity, it is to be broadly construed. *Duty v. City of Springdale, Arkansas,* 42 F.3d 460, 461 (8th Cir. 1994). Conversely, exceptions to judicial immunity are to be narrowly construed. *Adams v. McIlhany*, 764 F.2d 294, 298 (5th Cir. 1985). A judge does not act in the clear absence of all jurisdiction if he or she merely acts in excess of his or her authority. *Doe v. McFaul*, 599 F. Supp. 1421, 1431 (N.D. Ohio 1984).

---

[3] Although Elizabeth Gutmann has now retired, the Magistrate Judge will continue to refer to her as "Judge Gutmann" which has been the customary way of addressing and naming retired judges and because Marcum seeks relief against her in her official capacity.

It is without doubt that a duly elected Judge of the Miami County Municipal Court has subject matter jurisdiction to preside at the arraignment of persons arrested for criminal offenses in that County, to set bond, to hear the case on preliminary hearing, to appoint counsel, to grant a motion by the prosecutor to reduce a charge, and if the charge then pending is a misdemeanor, to accept a plea of guilty and impose a sentence. Whether or not Marcum's plea was knowing, intelligent, and voluntary because of lack of counsel is a question to be resolved in his direct appeal or in habeas corpus. But accepting a plea later determined to be unlawful does not deprive a judge of jurisdiction.

Because Judge Gutmann is not now sued in her individual capacity, it is not necessary to finally decide the absolute immunity question, but Marcum has evinced an intention to amend the Complaint and the Magistrate Judge notes that any amendment which would seek to impose damages liability on Judge Gutmann would not survive dismissal only upon his assertion that she lacked jurisdiction.

The Complaint as pleaded fails to state a claim for relief against Judge Gutmann in her official capacity. 42 U.S.C. § 1983. The text of § 1983, quoted above, makes judges liable for injunctive relief (which Marcum seeks) only if they have violated a declaratory decree or declaratory relief was unavailable. Marcum alleges neither of these two required predicates to judicial liability.

The Magistrate Judge therefore respectfully recommends that the Complaint be dismissed as to The Honorable Elizabeth Gutmann for failure to state a claim upon which relief can be granted.

**Corrections Officer Rob Davie**

Mr. Marcum sues Corrections Officer Rob Davie for excessive use of force in applying handcuffs and shackles.

The right to be free from excessively forceful handcuffing is clearly established for qualified immunity purposes. *Burchett v. Kiefer*, 310 F.3d 937 (6th Cir. 2002), *citing Kostrzewa v. City of Troy,* 247 F.3d 633, 641 (6th Cir. 2001); *Lyons v. City of Xenia*, 417 F.3d 565 (6th Cir. 2005), *citing Martin v. Heideman*, 106 F.3d 1308 (6th Cir. 1997). However, the plaintiff must allege some physical harm from the handcuffing. *Lyons,* 417 F.3d at 575-76, *citing Neague v. Cynkar,* 258 F.3d 504, 508 (6th Cir. 2001). The plaintiff must also have complained. *Id., citing Burchett.* In order for a handcuffing claim to survive summary judgment, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing." *Morrison v. Bd. of Trustees of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009), *citing Lyons*, 417 F.3d at 575-76.

Defendant Davie correctly points out that the Complaint does not aver that Marcum complained of the handcuffing. Under the cited case law, this omission is fatal to his claim. Handcuffing in itself is not cruel or unusual punishment. In the absence of a complaint by the arrestee, how is an officer to know that pain of any degree is being inflicted?

Davie also seeks dismissal of any perceived claim by Marcum of the intentional infliction of emotional distress as an Ohio common law tort. The Court does not read the Complaint as alleging any such claim.

The Magistrate Judge respectfully recommends that the Complaint be dismissed as to Defendant Davie for failure to state a claim upon which relief can be granted.

**Sheriff Dave Duchak**

Sheriff Duchak is sued both in his individual and official capacities. As to the individual capacity portion of the Complaint, Duchak asserts Marcum has not alleged any personal involvement by the Sheriff in any constitutional violation Marcum may have suffered (Motion, ECF No. 7, PageID 284). Personal participation is necessary for individual liability; respondeat superior does not suffice.

> "This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)(*citing Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). We must analyze separately whether Heyne has stated a plausible constitutional violation by each individual defendant, and we cannot ascribe the acts of all Individual Defendants to each individual defendant. See id. at 684-88; *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 512-15 (6th Cir. 1991); see also *Colvin*, 605 F.3d at 292 ("Allegations of respondeat superior do not sustain a § 1983 claim against state employees in their individual capacities, meaning that officials are personally liable for damages under that statute 'only for their own unconstitutional behavior.'" (*quoting Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989))).

*Heyne v. Metro. Nashville Pub. Schs*, 655 F.3d 556, 564 (6th Cir. 2011).

A supervisory employee cannot be held liable under § 1983 for the constitutional torts of those he supervises unless it is shown "that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Searcy v. City of Dayton*, 38 F.3d

282 (6th Cir. 1994), *quoting Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy*, 729 F.2d at 421, *citing Hays v. Jefferson Cty.*, 668 F.2d 869, 872-74 (6th Cir. 1982); *Phillips v. Roane Cty.*, 534 F.3d 531, 543 (6th Cir. 2008), quoting *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999), *in turn quoting Hays*, 668 F.2d at 874; *Alioto v. City of Shively*, 835 F.2d 1173 (6th Cir. 1987). A superior is not liable unless he is "somehow personally at fault by actively participating in, encouraging or directing the commission of illegal acts by his subordinates." *Coffy v. Multi-Cty. Narcotics Bureau*, 600 F.2d 570, 580 (6th Cir. 1979); *Monell v. Department of Social Services*, 436 U.S. 658, 692-95 (1978).

Upon review of the Complaint, the Magistrate Judge finds it does not include allegations of personal participation by the Sheriff in any constitutional violations Marcum may have suffered. Therefore it is respectfully recommended that the Complaint as to Sheriff Duchak in his individual capacity be dismissed.

Marcum's suit against Duchak in his official capacity is rightly seen as a suit against the entity of which he is an officer, Miami County. Judgment against a public servant in his official capacity imposes liability on the entity he represents and is not subject to good faith immunity. *Owen v. City of Independence*, 445 U.S. 622, 638 (1980); *Brandon v. Holt*, 469 U.S. 464 (1985); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

Respondeat superior also cannot ground an official capacity suit under 42 U.S.C. § 1983. Municipalities and other bodies of local government are "persons" within the meaning of § 1983 and may therefore be sued directly if they are alleged to have caused a constitutional tort through a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that

body's officers. *Powers v. Hamilton Cty. Pub. Defender Comm'n*, 501 F.3d 592, 606-07 (6th Cir. 2007); *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690 (1978). *Monell's* "policy or custom" requirement applies in § 1983 cases irrespective of whether the relief sought is monetary or prospective. *Los Angeles Cty. v. Humphries*, 562 U.S. 29 (2010). "To establish that a local government is liable under § 1983, a plaintiff must show that (1) the local government had an official policy, custom, or practice that (2) deprived the plaintiff of his federal rights." *Fields v. Henry Cty.*, 701 F.3d 180, 183 (6th Cir. 2012), *citing Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 777 (6th Cir. 2012)

An unconstitutional governmental policy can be inferred from a single decision by the highest officials responsible for setting policy in a particular area of the government's business. *Owen v. City of Independence,* 445 U.S. 622 (1980); *Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986). On the other hand, official policy cannot be inferred from the single unauthorized act of a subordinate government agent, e.g., an unauthorized shooting by a police officer. *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 311 (6th Cir. 2005)("By itself, 'the wrongful conduct of a single officer without any policy-making authority did not establish municipal policy.'" *quoting Collins v. City of Harker Heights,* 503 U.S. 115, 121 (1992)). Only municipal officials with final policymaking authority can subject the municipality to liability. *Pembaur, supra.* Whether a particular official has final policymaking authority is a question of state law. *Pembaur, supra; St. Louis v. Praprotnik*, 485 U.S. 112 (1988); *Jett v. Dallas Ind. School Dist*., 491 U.S. 701, 737 (1989). Identification of the official whose decisions represent the official policy of a particular local governmental unit is a question of law to be decided by the judge. *McMillian v. Monroe Cty., Ala.,* 520 U.S. 781, 784-85 (1997), *citing Jett v. Dallas Ind. School Dist*., 491 U.S. 701, 737 (1989). The policy must be

deliberate and discernible. *Molton v. City of Cleveland*, 839 F.2d 240 (6th Cir. 1988). For an act pursuant to custom to subject a municipality to liability, the custom must be so widespread, permanent, and well settled as to have the force of law. *Board of Cty. Comm'r of Bryan Cty., Okl., v. Brown,* 520 U.S. 397, 404 (1997); *Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 507-08 (6th Cir. 1996). To recover, a plaintiff must identify the policy, connect the policy to the political subdivision itself, and show that the particular injury was incurred because of the execution of that policy. *Brown,* 520 U.S. at 405; *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993). There must be a direct causal link between the policy and the alleged constitutional violation such that the governmental entity's deliberate conduct can be deemed the moving force behind the constitutional violation. *Graham v. County of Washtenaw*, 358 F.3d 377 (6th Cir. 2004), *citing Waters v. City of Morristown*, 242 F.3d 353, 362 (6th Cir. 2001); *citing Brown,* 520 U.S. at 404.

With respects to his claims regarding telephone calls, access to legal materials, and constitutionally inadequate jail conditions, Marcum has sufficiently pleaded the "policy" element of these asserted violations. He has not pleaded the existence of any policy pursuant to which Corrections Officer Davie is alleged to have violated his rights.

Regarding the telephone policy, the Magistrate Judge has already concluded that the policy of allowing calls to the Public Defender only when requested by that Office is not unconstitutional.

With respect to an initial telephone call upon arrest, Marcum claims he was entitled to one such call for free and avers that the Miami County Jail does not provide for such a call, despite Ohio Revised Code § 2935.20 and 2935.14 (Complaint, ECF No. 2, PageID 190). Instead he says inmates must purchase a phone card which can only be done at certain times or

bill the call to the credit or debit card of some other person. *Id.* Marcum avers that he attempted to call "both a bondsman, as well as an attorney, but none of them 'accepted' to pay for the call." *Id.* at PageID 192. Emphasizing how he believes the Miami County Jail practice violates the two Ohio statutes cited, he also claims it violates the Ohio Constitution and the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. *Id.* at PageID 196.

Seeking dismissal of this claim, Sheriff Duchak asserts the Miami County Jail "provides *all* inmates with access to a phone free of charge." (Motion, ECF No. 7, PageID 286.) Earlier he asserted that Marcum has admitted in his Complaint that inmates are permitted free access to a telephone, but the call recipient must pay for the call. *Id.*, citing Complaint at PageID 50 and 62.

It appears from the pleadings that nothing being done by the Sheriff prevents an inmate from placing and completing a telephone call without incurring any cost. Rather it appears from what is pleaded that the telephone company providing phone service at the Jail charges on a per call basis, rather than providing unlimited service outgoing call service on a per line basis. Thus the charges appear to be parallel to what is customary with contemporary cellphone service as opposed to land line service where outgoing calls are billed on a monthly rather than per call basis. The Sheriff himself is not charging for access to the phone, but the telephone company is charging on a per call basis.

Assuming the Complaint does adequately plead claims for violation of state law, such violations do not of themselves rise to the level of due process violations. Failure to abide by state law is not itself a constitutional violation. *Roberts v. City of Troy*, 773 F.2d 720 (6th Cir. 1985). Violation by a State of its own procedural rules does not necessarily constitute a violation of due process. *Bates v. Sponberg*, 547 F.2d 325, 329-30 (6th Cir. 1976); *Ryan v. Aurora City Bd. of Educ.*, 540 F.2d 222, 228 (6th Cir. 1976). "A state cannot be said to have a federal due

process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995).

On the other hand, the Magistrate Judge finds the Complaint does adequately state a claim under the Equal Protection Clause. It is correct, as Sheriff Duchak argues, that there is no claim the Jail singled Marcum out for adverse treatment (Motion, ECF No. 7, PageID 286). Therefore he has no claim under a class-of-one Equal Protection theory. See *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 298 (6th Cir. 2006). However, Marcum does state a claim, at least at the level of Rule 12(b)(6) scrutiny, that this policy – failure of the Sheriff to pay for at least one phone call – burdens his fundamental right to be released on reasonable bail and/or to obtain representation by an attorney. His Complaint may also state an Equal Protection claim on a theory of discrimination against the indigent by analogy to *Griffin v. Illinois*, 351 U.S. 12 (1956). The Magistrate Judge therefore respectfully recommends that the Motion to Dismiss as to the free phone call claim be denied.

Plaintiff's claim of a constitutional violation based on failure to provide him with copies of all his grievances and the dispositions of those grievances is not well taken. The Constitution does not guarantee any such right. To the extent Ohio law creates such a right, it does not rise to the level of a due process right. *See Levine v. Torvik, supra*. Furthermore, he has not alleged that denial of those copies is pursuant to a policy of the Sheriff. Defendants do not defend the case on a claim Marcum has not exhausted available administrative remedies.

Plaintiffs' claim of constitutionally inadequate jail conditions is too vague to be litigated. He does not allege any injury suffered by present conditions nor what specifically the jail

conditions should be. Instead, his claim amounts to saying in conclusory terms that he is constitutionally entitled to more fresh air, more sunlight, and more outdoor recreation.

Sheriff Duchak claims immunity under Ohio's immunity statutes (Motion, ECF No. 7, PageID 293). This argument is inapposite because the lawsuit purports to arise only under 42 U.S.C. § 1983 and Ohio's immunity statutes do not apply to such claims.

**Leave to Amend**

At the end of his Memorandum in Opposition, Marcum states that to the extent this Court believes his Complaint needs to be clarified, he seeks leave to amend by filing an amended complaint by June 30, 2018 (ECF No. 32-3, PageID 529-30). Amending the Complaint at this stage of the proceedings requires either the consent of opposing parties or leave of court. Fed. R. Civ. P. 15(a). The general standard for considering a motion to amend under Fed. R. Civ. P. 15(a) was enunciated by the United States Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962):

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of any allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

371 U.S. at 182. *See also Fisher v. Roberts*, 125 F.3d 974, 977 (6th Cir. 1997)(citing *Foman* standard).

In considering whether to grant motions to amend under Rule 15, a court should consider

whether the amendment would be futile, i.e., if it could withstand a motion to dismiss under Rule 12(b)(6). *Hoover v. Langston Equip. Assocs.,* 958 F.2d 742, 745 (6th Cir. 1992); *Martin v. Associated Truck Lines, Inc.,* 801 F.2d 246, 248 (6th Cir. 1986); *Marx v. Centran Corp.*, 747 F.2d 1536 (6th Cir. 1984); *Communications Systems, Inc., v. City of Danville*, 880 F.2d 887 (6th Cir. 1989); *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983); *Neighborhood Dev. Corp. v. Advisory Council*, 632 F.2d 21, 23 (6th Cir. 1980); *United States ex rel. Antoon v. Cleveland Clinic Found.*, 978 F. Supp. 2d 880, 887 (S.D. Ohio 2013)(Rose, J.); *William F. Shea, LLC v. Bonutti Reseach Inc.*, 2011 U.S. Dist. LEXIS 39794, *28 (S.D. Ohio March 31, 2011) (Frost, J.).

Likewise, a motion to amend may be denied if it is "brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995, cert denied 517 U.S. 112 (1996); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Prather v. Dayton Power & Light Co.*, 918 F.2d 1255, 1259 (6th Cir. 1990).

As these standards imply, the Court will not grant leave to amend "in blank." Rather, a motion to amend must be accompanied by a proposed amended complaint. Plaintiff's request that he be granted leave to amend until June 30, 2018, with no specification of the proposed amendments is denied without prejudice to a motion to amend accompanied by a proposed amended complaint.

**Conclusion**

The Magistrate Judge respectfully recommends that the Motions to Dismiss be

GRANTED except as to Marcum's Equal Protection claim regarding failure to provide a free telephone call to contact a bondsman or attorney.

February 22, 2018.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. .Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).