UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| TED MARCUM, | : | Case No. 3:17-cv-00437 |
| Plaintiff, | : | |
| | : | District Judge Walter H. Rice |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | |
| SHERIFF DAVE DUCHAK, et al., | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATIONS[1]

What remains in this prisoner civil rights case brought pro se by Plaintiff Ted Marcum is capsulized in the following:

> In the Court's view, Plaintiff has stated a plausible claim that the Miami County Jail's policy of not providing pretrial detainees with the ability to make free, direct phone calls during the booking process impermissibly burdens his fundamental right to counsel of his choice and to reasonable bail. He has also stated a plausible claim that the policy has a discriminatory effect on indigent pretrial detainees. In addition, Plaintiff has sufficiently alleged that this policy, established by Sheriff Duchak, is the moving force behind the alleged constitutional violations.

(Doc. #73, *PageID* #s 815-16).

Defendant presently moves to dismiss this case for failure to prosecute. (Doc. #s 106, 113). Plaintiff opposes dismissal. (Doc. #111).

When this case began Plaintiff was a pretrial detainee at the Miami County Jail in Miami County, Ohio where he remained until he finished serving a 180-day sentence. (Doc.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

#73, *PageID* #807). Presumably, this occurred on or around April 13, 2018 when Plaintiff notified the Court of his address change to 185 Dye Mill Road, Troy, Ohio 45373. (Doc. #58, *PageID* #729). At some point after this, he became peripatetic, alternating his address of record between the Butler County Jail and his home in Troy, Ohio. (Doc. #90, *PageID* #899). This, and some lethargy by Plaintiff, has led to problems moving the case forward. *See* Doc. #s 86, 89. Plaintiff's address changes prevented Defendant's counsel from contacting him about submitting a joint Rule 26(f) Report. This forced Defendant into filing his own Rule 26(f) Report three times in order to comply with deadlines set by the Court. (Doc. #s 76, 88, 97).

By April 3, 2019, the case had stalled due to Plaintiff's address problems. Consequently, the Court ordered him to show cause why the case should not be dismissed with prejudice due to his failure to prosecute. (Doc. #89). The Court explained:

> Plaintiff has a duty to keep the Court and opposing counsel informed of any address changes. Notably, this is the second time that counsel for Defendant has had to file a unilateral Rule 26(f) Report because Plaintiff has failed to comply with his obligations. *See* Doc. #76. Although the Court is sympathetic to the demands placed on *prose* litigants, failure to comply with the Court's Orders is unacceptable and will not be tolerated.

*Id*. at 892.

Plaintiff did not comply with the April 3rd Order and, as a result, on April 24, 2019, the Court ordered him to file his own Rule 26(f) Report. The Court also placed him on notice that if he failed to file his Report, "or even should he file same, should said filing be defective in one or more particulars, the captioned cause will be dismissed, for want of prosecution." (Doc. #91, *PageID* #899). Plaintiff thereafter filed his Rule 26(f) Report. (Doc. #93).

2

In early August 2019, Plaintiff filed a notice of change of address, disclosing his address as 185 Dye Mill Road, Troy, Ohio 45373. (Doc. # 95).

On December 4, 2019, District Judge Rice held a telephone conference with the parties and granted Defendant's Motion to Modify Case Schedule and reset the trial date for December 7, 2020. (Doc. #104).

On January 13, 2020, Defendant served Plaintiff, by First Class Mail, with his first set of interrogatories and first request for production of documents. (Doc. #105). Defendant sent his discovery requests to Plaintiff at his address of record—185 Dye Mill Road in Troy, Ohio. But Defendant again ran into problems. On March 2, 2020, the Postal Service returned Defendant's discovery requests to him marked address not known (ANK). (Doc. #106, *PageID* #1205).

Defendant contends that dismissal of this case is warranted for Plaintiff's failure prosecute because he has failed to update the Court with his mailing address on multiple occasions and because the Court has admonished and warned him on several occasions that any further failure to meet this obligation would result in dismissal of this case. Defendant asserts that Plaintiff has ignored these warnings. Defendant further contends that he has suffered prejudice caused by Plaintiff's failures to update his contact information, and Defendant has been forced to litigate this case with almost no access to Plaintiff, thus needing to waste time and resources tracking him down. Defendant asserts that because he is no longer residing at his address of record, they are unable to serve him with basic discovery requests.

Rule 41(b) of the Federal Rules of Civil Procedure permits a defendant to move to

3

dismiss "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order .…" Judge Rice has thoroughly explored Rule 41(b)'s boundaries:

> The authority to dismiss a case under Rule 41(b) "is available to the district court as a tool to effect management of its docket and avoidance of unnecessary burdens on the tax-supported courts and opposing parties." *Knoll v. American Tel. & Tel. Co.,* 176 F.3d 359, 363 (6th Cir. 1999) (quotation omitted). District courts are permitted substantial discretion in determining whether dismissal is appropriate. *Id.* However, the Sixth Circuit has emphasized that dismissal is a "harsh" remedy reserved for "extreme situations where a plaintiff has engaged in a clear pattern of delay or contumacious conduct." *Holt v. Pitts,* 619 F.2d 558, 562 (6th Cir. 1980) (reversing order of dismissal in § 1983 action). "The sanction of dismissal is appropriate only if the attorney's actions amounted to failure to prosecute and *no alternative sanction* would protect the integrity of the pretrial process." *Mulbah v. Detroit Bd. of Educ.,* 261 F.3d 586, 594 (6th Cir. 2001) (emphasis in original) (quotation omitted). The Sixth Circuit has often reversed district court decisions, dismissing a complaint under Rule 41(b), absent a showing of bad faith or notice to the plaintiff that the court is contemplating involuntary dismissal. *E.g., Nader v. Land,* 433 F.3d 496, 501-02 (6th Cir. 2006) (reversing lower court's dismissal and citing other similarly reversed cases).

*Offill v. Pennsylvania Life Ins. Co.*, 243 F.R.D. 276, 284 (S.D. Ohio 2007).

Although there has certainly been delay in this case caused by Plaintiff's failure to keep Defendant and the Court apprised of his address, the present circumstances—Plaintiff's failure to timely respond to Defendant's written discovery requests—has not been the result of similar omissions, or bad-faith conduct, by him.

On January 13, 2020, Plaintiff lived at his address of record, 185 Dye Mill Road in Troy, Ohio. Defendant's counsel, therefore, correctly sent his discovery requests to Plaintiff at that address by certified mail. Plaintiff's responses were due within thirty days after they were served. *See* Fed. R. Civ. P. 33(b)(2), 34(b)(2). But, as described above, something went wrong with the mailing. It did not reach Plaintiff at his address of record, and Defendant received his discovery requests back from the Postal Service on March 2, 2020

4

marked address not known. *See* Doc. #106, *PageID* #s 1200, 1205. Defendant concluded from this that Plaintiff had again "failed to notify the Court and Defendant's counsel of his changed mailing address …." *Id*. at 1200. Although this was a reasonable inference, it turned out to be incorrect. Plaintiff swears that he had not changed his address. *See* Doc. #111, *PageID* #s 1447. He later checked with the Postal Service and learned that if no one responds to the mail carrier's knock on the addressee's door, which is the customary practice when delivering certified mail, the mail carrier will leave a note attached to the door. The note informs the addressee of the existence of the certified mail and that it is being held at the Post Office.

This explains why Defendant's counsel did not receive the certified mail back until March 2—the Postal Service was holding it. Plaintiff, however, swears he never received any note or notice from the Postal Service about Defendant's certified mail. *See id*. at 1448. Plaintiff points out that he did receive at his Dye Mill Road address a copy of the Court's Notice to him about Defendant's Motion to Dismiss. *Id*. at 1449. This apparently was when he first learned about the unsuccessful certified mailing.

It is possible that Plaintiff did not receive a note— assuming the mail carrier left one—at his Dye Mill Road address concerning Defendant's certified mail. If his statements are credited, he did not. If his statements are overlooked, the question—whether he actually received a note left by a mail carrier—remains unanswered on the present record. In these circumstances, and given the harshness of dismissal for failure to prosecute, this is not an "'extreme situation'" in which Plaintiff "'has engaged in a clear pattern of delay or contumacious conduct.'" *Offill*, 243 F.R.D. at 284 (quoting, *Holt,* 619 F.2d at 562).

5

Defendant lastly contends that Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss for Failure to Prosecute was untimely.  Relying on Fed. R. Civ. P. 5(d)(2), Defendant reasons that a document is not filed until the Clerk of Court receives it.  Defendant sees Plaintiff's untimely filing as again demonstrating his unwillingness to comply with Court Orders and deadlines, further revealing his clear pattern of delay.

The Court notified Plaintiff that he had until March 27, 2020 to file his response to Defendant's Motion to Dismiss.  (Doc. #107).  This was twenty-four days after Defendant served his Motion on Plaintiff by certified mail.  (Doc. #106, *PageID#* 1204).  Yet, Plaintiff gets the benefit of three additional days—until March 30, 2020—because Defendant served Plaintiff by mail.  *Id.*; *see* Fed. R. Civ. P. 6(d).  This means that when the Clerk docketed Plaintiff's Memorandum in Opposition on March 30, 2020, it was timely filed.

Accordingly, Defendant's Motion to Dismiss lacks merit.

**IT IS THEREFORE RECOMMENDED THAT**:

Defendant Sheriff Dave Duchak's Motion to Dismiss for Failure to Prosecute (Doc. #106) be DENIED.

May 12, 2020 *s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).